IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| DYLAN VANN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:21-cv-00019-O-BP |
| | § | |
| CITY OF WICHITA FALLS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Before the Court are an unanswered Motion for Summary Judgment with brief and appendix in support (ECF Nos. 23-25) and Notice of Conviction (ECF No. 28) that Defendants Venable, Atnip, Finnegan, Shaw, and Ruff (collectively, "Defendants") filed on October 22, 2021 and January 6, 2022, respectively. After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** the Motion and **ENTER SUMMARY JUDGMENT** in favor of Defendants.

**I.    BACKGROUND**

This action arises from a check welfare call in Wichita Falls, Texas. ECF No. 1. Defendants are police officers with the Wichita Falls Police Department ("WFPD"). *Id.* On April 11, 2019, officers responded to a call from Dylan Vann's mother, who told them her son was experiencing a "mental breakdown." ECF Nos. 1 at 4; 24 at 6-7. Vann allegedly told his mother he was coming to her house to "bust out her windows and kill himself in her driveway," prompting her call to WFPD. *Id.* WFPD dispatched Officer Karl Stewart, who is not a defendant in this action. *Id.* Stewart stopped a white male, later identified as Vann, close to Vann's mother's residence. ECF No. 24 at 7. Vann fled. *Id.* Stewart chased him, and Defendant Venable joined the chase moments

later after arriving at the scene. *Id.* While chasing Vann, the officers repeatedly ordered him to stop. *Id.* at 10.

When the officers caught up to Vann in the parking lot of a community healthcare center, Venable ordered him to put his hands in the air. *Id.* at 12. Rather than complying, Vann pulled a handgun from his backpack and aimed it at the officers. *Id.* Stewart and Venable then discharged their service weapons, shooting Vann multiple times. ECF Nos. 1 at 4; 24 at 7. They were the only officers present when the shooting occurred. ECF No. 24 at 8. After firing their weapons, the officers quickly approached Vann, kicked his gun out of arms' reach, checked his condition, administered first aid, and called for medical assistance. *See id.* at 12-13; ECF No. 25 at 4-7. Security cameras from the nearby clinic captured the entire incident. *See* DVD, 104 MLK Employee Parking (Side Street) (hereinafter "Vid. 1"); DVD, 103 MLK Employee Parking (hereinafter "Vid. 2").

While Vann survived, he suffered "numerous life-altering injuries," including "paralysis, [a] collapsed lung, [a] shattered spine, multiple fractures to both his hands and wrists, and excessive bleeding." ECF No. 1 at 5 (cleaned up). Vann filed this excessive force action under 42 U.S.C. § 1983 in March 2021. *Id.* He accuses Defendants of "excessive and/or unnecessary force" that was "objectively unreasonable" given the circumstances, arguing that "no reasonable [] officer . . . would have initiated such a brutal and life-threatening attack on any person [if] in the position of the Defendant Officers." *Id.* Vann names as defendants the City of Wichita Falls and WFPD Chief Manuel Borrego, plus thirteen identified WFPD officers and ten additional Jane Does. *Id.* at 1-4. Of the defendants named, only four were involved in the events of April 11, 2019: Defendant Venable was directly involved, Defendants Atnip and Shaw arrived at the scene after the shooting to assist first responders, and Defendant Ruff responded to the original call from Vann's mother

and eventually arrived at the community healthcare center to establish a perimeter around the scene. *See* ECF No. 24 at 12-18. It is thus unclear why Vann sues Defendants Castillo, Mauck, Keith, Finnegan, Halloway, Cullar, Rael, Cook, Rhoden, and Montana, none of whom responded to the call or participated in the subsequent chase, shooting, or medical response. *Id.*

## II.   LEGAL AUTHORITIES

Courts grant summary judgment if "there is no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). "A material fact is one that might affect the outcome of the suit under governing law, and a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (cleaned up). "[A] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 287 (5th Cir. 2020). Even so, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Police officers merit qualified immunity unless (1) they "violated a statutory or constitutional right of the plaintiff" and (2) "the right was clearly established at the time of the violation." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citation omitted). Prong one asks if the defendants' conduct violated the plaintiff's rights under the Fourth Amendment. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). This happens when an arrestee "suffers an injury that results directly and only from [the officers'] clearly excessive and objectively unreasonable use of force." *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020) (citation omitted); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989). Courts make this assessment from "the perspective of a reasonable officer on the scene, rather than . . . the 20/20 vision of hindsight."

*Graham*, 490 U.S. at 396. The analysis considers: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest." *Id.* When analyzing these factors, courts must consider "the relationship between the need [for force] and the amount of force used." *Joseph*, 981 F.3d at 332 (cleaned up) (quoting *Deville v. Mercantel*, 567 F.3d 156, 167 (5th Cir. 2009)).

If the Court finds at step one that the defendants violated the plaintiff's constitutional or statutory rights, the next step asks if the violated right was "clearly established at the time." *D.C. v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 589 (2018) (citation omitted). "A right is 'clearly established' only if it 'is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Courts frame this inquiry "with specificity and granularity." *Morrow v. Meachum*, 917 F.3d 870, 874-75 (5th Cir. 2019). Thus, the doctrine yields only if relevant precedent "ha[s] placed the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

### III. ANALYSIS

After reviewing the summary judgment evidence, the undersigned concludes no genuine dispute of material fact remains in this case, and Defendants are entitled to judgment as a matter of law. The summary judgment record reflects Defendant Finnegan never went to the scene of the shooting and was not involved with the matter in any way. *See* ECF No. 24 at 12-13; Vid. 2 at 4:13-4:45. The evidence further reflects Defendants Atnip, Shaw, and Ruff did not arrive at the scene until after Venable and Stewart discharged their weapons. *See id.* at 10-11; ECF No. 5-6, 9-12. Consequently, no factual basis exists for their liability in this action, and Judge O'Connor should grant the motion for summary judgment for those Defendants. *See* Fed. R. Civ. P. 56(a);

*Renwick*, 901 F.3d at 611 ("A material fact is one that might affect the outcome of the suit under governing law, and a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party."). The remaining analysis solely concerns Defendant Venable.

### A. Venable is entitled to qualified immunity.

Qualified immunity presumptively covers Venable's actions unless he (1) "violated a statutory or constitutional right of the plaintiff" and (2) "the right was clearly established at the time of the violation." *Dyer*, 964 F.3d 374, 380 (citation omitted). Courts need not ask the second question if they ask the first and find the defendant's conduct did not violate any statutory or constitutional right. *Id.*; *see also Pearson v. Callahan*, 555 U.S. 223, 237 (2009). Because the summary judgment evidence conclusively shows Venable did not violate Vann's Fourth Amendment rights, the analysis here stops at question one.

Venable violated Vann's Fourth Amendment rights if his use of force was "clearly excessive and objectively unreasonable." *Joseph*, 981 F.3d at 332. Vann argues precisely that, maintaining that "no reasonable [] officer . . . would have initiated such a brutal and life-threatening attack on any person [if] in the position of [Venable]." ECF No. 1 at 5. This argument is unpersuasive. When assessing Venable's use of force, the Court must use "the perspective of a reasonable officer on the scene, rather than . . . the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. With that perspective, the Court must look to: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest." *Id.* Applied here, prong one is immaterial and prongs two and three weigh against Vann.

The first *Graham* prong is immaterial because this case began with a check welfare call, meaning no specific crime led to Venable's use of force. *See* ECF No. 24 at 6. Nevertheless, the

5

second and third prongs weigh heavily against Vann. For prong two, Venable justifiably believed Vann was a threat to himself, the officers, and the public, as he had expressed suicidal ideation to his mother, threatened her property, and fled toward a busy community clinic while armed. *Id.* at 5-8. Then, to eliminate all doubt, Vann pulled a loaded handgun from his backpack and aimed it directly at the officers, which the clinic's security camera footage confirms. *See* Vid. 1 at 0:46-0:47; Vid. 2 at 4:35-4:37. For prong three, Vann was actively attempting to evade arrest when the officers discharged their weapons. *Id.* Consequently, the *Graham* factors justify Venable's use of force under the circumstances.

Courts must conduct the *Graham* analysis with an eye toward a single overarching consideration: "the relationship between the need [for force] and the amount of force used." *Joseph*, 981 F.3d at 332 (cleaned up) (quoting *Deville*, 567 F.3d at 167). The law is clear that officers may discharge their service weapon—thus utilizing potentially lethal force—when responding to a threat of equal gravity. *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985). Here, security camera footage shows Vann pulling a loaded handgun from his backpack and aiming it at Stewart and Defendant Venable, prompting the officers to discharge their service weapons in self-defense. *See* Vid. 1 at 0:46-0:47; Vid. 2 at 4:35-4:37. Anglo-American jurisprudence has unwaveringly acknowledged the right of law enforcement personnel to counter lethal force with lethal force. *See, e.g.*, *Garner*, 471 U.S. at 12-15 (explaining the doctrinal evolution from the common law rule that lethal force could always be used to stop fleeing felons to the modern rule that lethal force is reserved for suspects that "pose[] a threat of serious physical harm, either to the officer or to others"). The summary judgment evidence shows that is exactly what happened when Venable fired at Vann in April 2019. Thus, Venable was acting within his rights when he

discharged his weapon, and his doing so did not violate Vann's rights under the Fourth Amendment.

### B. The summary judgment record establishes Venable's entitlement to judgment as a matter of law.

Good-faith assertions of qualified immunity invert the typical summary judgment burden of proof, "shifting it to the plaintiff to show that the defense is not available." *Ratliff*, 948 F.3d at 287. Here, Defendants provided extensive factual briefing, eight different affidavits, and security camera footage unequivocally confirming the officers' description of the incident. *See* ECF Nos. 24-26; V1 at 0:44-0:55; V2 at 4:27-4:38. Defendants supplemented the summary judgment record by filing a Notice of Conviction, which shows Vann pleaded guilty to Aggravated Assault Against a Public Servant. ECF No. 28. Relevantly, Vann submitted a judicial confession as part of his guilty plea, in which he stipulated to the following facts:

> On or about April 11, 2019 in Wichita County, Texas, I did then and there intentionally and knowingly threaten [the officers] . . . with imminent bodily injury by brandishing a firearm and/or pointing a firearm at [the officers], and did then and there use or exhibit a deadly weapon, namely a firearm, during the commission of the assault, and I did then and there know [the officers]. . . [were] attempting to detain me in reference to a suicide call investigation.

*Id.* at 10. Though Vann was afforded the same opportunity as Defendants to submit summary judgment evidence, he did not. Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," the Court is left with a lopsided evidentiary record here. *See Anderson*, 477 U.S. at 255. Defendants provided irrefutable video confirmation of their entitlement to qualified immunity, *see* Vid. 1 at 0:44-0:55; Vid. 2 at 4:27-4:38, and Vann's own confirmation of their recounting of the events. *See* ECF No. 28. In response, Vann provided nothing. Given the clarity of the summary judgment evidence, however, any attempt by Vann to furnish such evidence likely would have proven futile.

7

### IV.   CONCLUSION

Defendants merit qualified immunity because they did not "violate[] a statutory or constitutional right" of Vann that was "clearly established at the time of the violation." *Dyer*, 964 F.3d at 380. After attempting to flee from law enforcement, Vann pulled a gun on his arresting officers, prompting Stewart and Defendant Venable to discharge their service weapons, shooting him multiple times in self-defense. No genuine issue of material fact remains on this matter, which the clinic's security camera footage and the facts stipulated in Vann's judicial confession confirm. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Defendants' Motion for Summary Judgment. ECF No. 23.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on January 27, 2021.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

9