**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **DYLAN VANN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:21-cv-00019-O-BP** |
| | § | |
| **CITY OF WICHITA FALLS,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Before the Court is the Motion for Summary Judgment with brief in support filed by Wichita Falls Chief of Police Manuel Borrego ("Borrego") and the City of Wichita Falls ("the City") (collectively "Defendants") on February 6, 2023. ECF Nos. 39, 40. The Clerk mailed orders directing Vann to file a response to his address of record on the docket and to the Estelle Unit of the Texas Department of Criminal Justice ("TDCJ"), Vann's place of incarceration according to the TDCJ website. ECF Nos. 41 and 42. Additionally, counsel for Borrego and the City served the Motion and Brief on Vann on February 8, 2023 and March 8, 2023 to his address at the Estelle Unit and to his address of record on the docket. ECF No. 44. Despite these notices, Vann has not filed a response. After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** the Motion for Summary Judgment in favor of Defendants and **DISMISS** Plaintiff's claims with prejudice.

**I.     BACKGROUND**

This case arises from a check welfare call to the Wichita Falls Police Department ("WFPD"). ECF No. 1. On April 11, 2019, officers responded to a call from Dylan Vann's mother reporting that her son was experiencing a "mental breakdown." ECF Nos. 1 at 4; 24 at 6-7. Dylan

Vann ("Vann") allegedly told his mother that he was coming to her house to "bust out her windows and kill himself in her driveway," prompting her call. *Id.* WFPD dispatched Officer Karl Stewart, who is not a defendant in this action. *Id.* Stewart stopped a white male, later identified as Vann, close to Vann's mother's residence. ECF No. 24 at 7. Vann fled. *Id.* Stewart chased him, and Officer Venable joined the chase moments later after arriving at the scene. *Id.* While chasing Vann, the officers repeatedly ordered him to stop. *Id.* at 10.

When the officers caught up to Vann in the parking lot of a community healthcare center, Venable ordered him to put his hands in the air. *Id.* at 12. Rather than complying, Vann pulled a handgun from his backpack and aimed it at the officers. *Id.* Stewart and Venable then discharged their service weapons, shooting Vann multiple times. ECF Nos. 1 at 4; 24 at 7. They were the only officers present when the shooting occurred. ECF No. 24 at 8. After firing their weapons, the officers quickly approached Vann, kicked his gun out of arms' reach, checked his condition, administered first aid, and called for medical assistance. *See id.* at 12-13; ECF No. 25 at 4-7. Security cameras from the nearby clinic captured the entire incident. *See* ECF No. 25, DVD, 104 MLK Employee Parking (Side Street) (hereinafter "Vid. 1"); DVD, 103 MLK Employee Parking (hereinafter "Vid. 2").

Vann survived his gunshot wounds, but suffered "numerous life-altering injuries," including "paralysis, [a] collapsed lung, [a] shattered spine, multiple fractures to both his hands and wrists, and excessive bleeding." ECF No. 1 at 5 (cleaned up). Vann filed this action under 42 U.S.C. § 1983 in March 2021, claiming that defendants violated his constitutional rights by the use of excessive force. *Id.* He accused defendants of "excessive and/or unnecessary force" that was "objectively unreasonable" given the circumstances, arguing that "no reasonable [] officer . . . would have initiated such a brutal and life-threatening attack on any person [if] in the position of

the Defendant Officers." *Id.* Vann named as defendants the City, WFPD, and Borrego, alleging that they had a duty, but failed to implement or enforce policies and procedures that protected Vann's constitutional rights. ECF No. 5 at 2. He also named thirteen identified WFPD officers and ten additional Jane Does. *Id.* at 1-4. Of the defendants named, only four were involved in the events of April 11, 2019. Venable was directly involved, Atnip and Shaw arrived at the scene after the shooting to assist first responders, and Ruff responded to the original call from Vann's mother and eventually arrived at the community healthcare center to establish a perimeter around the scene. *See* ECF No. 24 at 12-18. Borrego was not present at the scene. ECF No. 24 at 8.

The served officers, except for Borrego, filed a Motion for Summary Judgment and Brief and Appendix in Support. ECF Nos, 23, 24, 25, and 26. The undersigned recommended to Judge O'Connor that he grant the Motion (ECF No. 29), and on June 9, 2022, Judge O'Connor accepted the findings, conclusion, and recommendations. ECF No. 30. On December 9, 2022, Judge O'Connor accepted the undersigned's additional findings, conclusions, and recommendation and dismissed the unserved defendants from the case. ECF Nos. 35, 37.  On December 14, 2022, Judge O'Connor issued a scheduling order for the only remaining Defendants setting deadlines for filing dispositive motions and pretrial materials and setting the case for trial. ECF No. 38. On February 6, Borrego and the City filed their Motion for Summary Judgment. ECF No. 39. As noted above, Vann has not responded, and this Motion is now ripe for review.

## II.    LEGAL STANDARDS

### A.    Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Slaughter v. S. Talc Co.*, 949 F.2d 167,

170 (5th Cir. 1991). Disputes concerning material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law." *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment would be improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Merely colorable evidence or evidence not significantly probative will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249–50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Id.* at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

The Court must view summary judgment evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

4

1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 242–43. The movant's motion for summary judgment will be granted only if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56; *Duckett*, 950 F.2d at 276.

"[A] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Ratliff v. Aransas Cty.*, 948 F.3d 281, 287 (5th Cir. 2020). Even so, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

### B.    Qualified Immunity

Police officers merit qualified immunity unless (1) they "violated a statutory or constitutional right of the plaintiff" and (2) "the right was clearly established at the time of the violation." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citation omitted). In a case such as this one, the Court must ask under prong one of the analysis if the defendants' conduct violated the plaintiff's rights under the Fourth Amendment. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). This happens when an arrestee "suffers an injury that results directly and only from [the officers'] clearly excessive and objectively unreasonable use of force." *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020) (citation omitted); *see also Graham v. Connor*, 490

U.S. 386, 395 (1989). Courts make this assessment from "the perspective of a reasonable officer on the scene, rather than . . . the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The analysis considers: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest." *Id.* When analyzing these factors, courts must consider "the relationship between the need [for force] and the amount of force used." *Joseph*, 981 F.3d at 332 (quoting *Deville v. Mercantel*, 567 F.3d 156, 167 (5th Cir. 2009)).

If the Court finds at step one that the defendants violated the plaintiff's constitutional or statutory rights, the next step asks if the violated right was "clearly established at the time." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation omitted). "A right is 'clearly established' only if it 'is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Courts frame this inquiry "with specificity and granularity." *Morrow v. Meachum*, 917 F.3d 870, 874-75 (5th Cir. 2019). Thus, the doctrine yields only if relevant precedent "ha[s] placed the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

### C.   Municipal Liability and Supervisory Liability Under § 1983

Municipalities cannot be liable under § 1983 based on a theory of respondeat superior. *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "A municipality is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Valle*, 613 F.3d at 541 (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). To state a *Monell* claim against a municipality, the plaintiffs must plead facts "that plausibly establish: 'a policymaker; an official policy; and a

violation of constitutional rights whose "moving force" is the policy or custom.'" *Ratliff v. Aransas City, Texas,* 948 F.3d 281, 285 (5th Cir. 2020) (quoting *Piotrowski,* 237 F.3d at 578).

Supervisory officials also cannot be liable under § 1983 for the actions of subordinates on any theory of vicarious or respondeat superior liability. *Estate of Davis ex rel. McCully v. City of N. Richland Hills,* 406 F.3d 375, 381 (5th Cir. 2005). Rather, a plaintiff must show either that the supervisor "personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Evett v. DETNTFF,* 330 F.3d 681, 689 (5th Cir. 2003) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987)); see *Estate of Davis*, 406 F.3d at 381 ("Plaintiffs must show that the conduct of the supervisors denied [the decedent] his constitutional rights.").

## III.    ANALYSIS

After reviewing the summary judgment evidence, the undersigned concludes that no genuine dispute of material fact remains in this case, and Defendants are entitled to judgment as a matter of law. It is unclear from the amended complaint whether Vann intended to bring suit against Borrego in his individual or official capacity, or both. *See* ECF No. 5. The Court liberally construes Vann's amended complaint as asserting claims against Borrego in both capacities.

The summary judgment record reflects that Borrego was not at the scene of the shooting or personally involved with the matter in any way. *See* ECF Nos. 24 at 8; 29 at 2. Consequently, there are no facts to show that Borrego's conduct could have caused Vann any constitutional harm. Thus, no factual basis exists for his liability in this action, and Judge O'Connor should grant the Motion as to Borrego in his individual capacity. *See* Fed. R. Civ. P. 56(a); *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) ("A material fact is one that might affect the outcome of the suit under governing law, and a fact issue is genuine if the evidence is such that a

reasonable jury could return a verdict for the non-moving party."). The remaining analysis concerns Borrego in his official capacity and municipal liability claims against the City.

Judge O'Connor should dismiss Vann's claims against Borrego and the City because there was no underlying constitutional violation for which Defendants could be liable. The Court treats official capacity claims as claims against the municipality. *Mason v. Lafayette City-Par. Consol. Gov't,* 806 F.3d 268, 279-80 (5th Cir. 2015); *see Goodman v. Harris Cty.,* 571 F.3d 388, 396 (5th Cir. 2009) ("Official capacity suits are really suits against the governmental entity[.]"); *Turner v. Houma Mun. Fire & Police Civil Serv. Bd*., 229 F.3d 478, 485 (5th Cir. 2000) ("In any case in which a defendant government official is sued in his individual and official capacity, and the city or state is also sued . . . [t]he official-capacity claims and the claims against the governmental entity essentially merge.").

In this case, because Vann did not raise an issue of material fact on any violation of his constitutional right to be free of excessive force, the City and Borrego cannot be liable for this asserted constitutional violation. Evidence presented in this case's prior Summary Judgment Motion provided extensive factual briefing, eight different affidavits, and security camera footage unequivocally confirming the officers' description of the incident. *See* ECF Nos. 24-26, 29. Defendants supplemented the summary judgment record by filing a Notice of Conviction, which showed that Vann pleaded guilty to Aggravated Assault Against a Public Servant. ECF No. 28. Relevantly, Vann submitted a judicial confession as part of his guilty plea, in which he stipulated to the following facts:

> On or about April 11, 2019 in Wichita County, Texas, I did then and there intentionally and knowingly threaten [the officers] . . . with imminent bodily injury by brandishing a firearm and/or pointing a firearm at [the officers] , and did then and there use or exhibit a deadly weapon, namely a firearm, during the commission of the assault, and I did then and there know [the officers]. . . [were] attempting to detain me in reference to a suicide call investigation.

*Id.* at 10.

The Court already has held that Vann's constitutional rights were not violated throughout this incident. *See* ECF No. 29, 30. Further, even if there had been a violation, Vann has offered no evidence that implicates Borrego or the City or proves the existence of a policy the enforcement of which would cause the constitutional harm that Vann asserts. Vann had every opportunity to respond to the Motion and offer evidence in support of his assertions, but he did not do so. Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," the Court is left with a one-sided evidentiary record. *See Anderson*, 477 U.S. at 255.

"The Supreme Court has explained that a municipality cannot be liable '[i]f a person has suffered no constitutional injury at the hands of the individual police officer.'" *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796 (1986)). Thus, official capacity "claims fail without an underlying constitutional violation." *Whitley v. Hanna*, 726 F.3d 631, 648- 49 (5th Cir. 2013) (citing *Bustos*, 599 F.3d at 467 ("Because [plaintiff] has alleged no constitutional injury attributable to the Officers, [plaintiff] has failed to state a claim that a City policy was the moving force behind a violation of his constitutional rights.")). *See Romero v. City of Grapevine, Texas,* 888 F.3d 170, 178-79 (5th Cir. 2018) ("In order to confer liability on the City and [the police chief], there must be a sufficient causal connection between [the City's] conduct and the constitutional violation."). Accordingly, the Court should dismiss Vann's claims against Borrego and the City.

## IV.    CONCLUSION

The summary judgment record establishes that Defendants are entitled to judgment as a matter of law. They did not "violate[] a statutory or constitutional right" of Vann that was "clearly

established at the time of the violation." *Dyer*, 964 F.3d at 380. After attempting to flee from law enforcement, Vann pulled a gun on his arresting officers, prompting two officers to discharge their service weapons, shooting him multiple times in self-defense. Borrego was not present at the scene and is not liable in his individual capacity. Moreover, neither Borrego nor the City had or enforced any policy that could be the moving force behind a violation such as the one Vann has alleged here. Vann has offered no evidence to support his. No genuine issue of material fact remains for a jury's consideration in this matter. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Defendants' Motion for Summary Judgment (ECF No. 39) and **DISMISS** Plaintiff's claims with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on April 7, 2023.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE